UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

SUSSMAN SALES COMPANY, INC.,

                                Plaintiff,

                -v.-

VWR INTERNATIONAL, LLC,

                                Defendant.

---

20 Civ. 2869 (KPF)

**OPINION AND ORDER**

KATHERINE POLK FAILLA, District Judge:

Plaintiff believes that this Court erred in numerous respects in granting in part and denying in part Defendant's motion to dismiss in its Opinion and Order of March 26, 2021 (the "March 26 Opinion").  Plaintiff argues, among other things, that the Court misperceived Plaintiff's factual allegations and the reasonable inferences that could be drawn therefrom, and then misapplied federal and New York State law.  In consequence, Plaintiff has moved for this Court to reconsider the March 26 Opinion and, in the alternative, for severance of the dismissed claims pursuant to Federal Rule of Civil Procedure 54(b).  Separately, Plaintiff has moved to amend the operative Complaint.  Defendant opposes both motions, arguing principally that Plaintiff's claims of error are unfounded and that its request to amend is untimely and futile.  As set forth in the remainder of this Opinion, the Court grants one portion of Plaintiff's motion for reconsideration, but otherwise denies that motion as well as Plaintiff's motion to amend.

A.    **Background**

The Court presumes familiarity with the factual and procedural

backgrounds of this case, both of which are detailed in the March 26 Opinion.

(*See generally* March 26 Opinion).  In broad summary, in October 2018,

Plaintiff Sussman Sales Company, Inc. ("Sussman") entered into an agreement

(the "Sales Representative Agreement" or the "Agreement") with Defendant VWR

International, LLC ("VWR"), which agreement appointed Plaintiff to serve as

Defendant's sales representative in connection with the marketing and sale of

interactive flat screen devices known as "Triumph Boards."  Prior to engaging

Sussman, VWR had a contract in place with another distributor of education

technology, Troxell Communications, Inc. ("Troxell"), to list the Triumph Boards

on its e-catalog, "FAMIS."  At the time Sussman and VWR negotiated the

Agreement, Sussman was told that Troxell might cease listing the Triumph

Board on FAMIS, but that in that event, VWR "promptly" would engage another

vendor, CDW-G ("CDW"), to step into Troxell's role.

According to Plaintiff, it subsequently learned that Defendant was

engaging in bid-rigging and price-fixing of Triumph Boards sold to New York

City schools.  Upon Plaintiff's determination that Defendant had not adequately

addressed this conduct, and amidst other perceived issues with Defendant's

performance, Plaintiff notified Defendant that it was terminating the Sales

Representative Agreement in April 2019.

Plaintiff then proceeded to file this suit, alleging claims that included:

(i) breach of contract; (ii) breach of warranty; (iii) breach of the duty of good

faith and fair dealing; and (iv) fraud.  Defendant moved for partial dismissal of

Plaintiff's Complaint under Federal Rule of Civil Procedure 12(b)(6).  By

Opinion and Order dated March 26, 2021, the Court granted in part and

denied in part Defendant's motion to dismiss.  *See Sussman Sales Co., Inc.* v.

*VWR Int'l, LLC*, No. 20 Civ. 2869 (KPF), 2021 WL 1165077 (S.D.N.Y. Mar. 26,

2021).  As relevant to the instant motion, the Court dismissed with prejudice

the following claims: (i) fraud in the inducement (Claim Two); (ii) fraud to avoid

the Agreement's termination (Claim Three); (iii) breach of warranty (Claim

Four); (iv) breach of contract, except to the extent Plaintiff alleged breaches

related to notification of purchases and payment of commissions (Claim Five);

(v) breach of the implied duty of good faith and fair dealing (Claim Six); and

(vi) indemnification (Claim Seven).  The Court also dismissed Plaintiff's

demands for punitive damages and lost profits.

On April 9, 2021, Plaintiff filed two separate applications: (i) a letter

motion seeking leave to file an amended complaint (Dkt. #35), and (ii) a motion

for reargument and/or severance of the dismissed claims (Dkt. #36, 38).  On

April 15, 2021, Plaintiff filed an amended letter motion for leave to file an

amended complaint.  (Dkt. #44).  Defendant filed opposition submissions on

April 14, 2021 (Dkt. #41), and April 29, 2021 (Dkt. #46).  Plaintiff filed a joint

reply memorandum on May 7, 2021 (Dkt. #47).[1]

---

[1]      For ease of reference, the Court refers to Plaintiff's Complaint as "Compl." (Dkt. #2);
Plaintiff's opposition memorandum to Defendant's motion to dismiss as "Pl. Opp." (Dkt.
#25); the Court's Opinion and Order of March 26, 2021, as the "March 26 Opinion"
(Dkt. #32); Plaintiff's memorandum in support of his motion for reconsideration and

**B.    The Court Grants in Part and Denies in Part Plaintiff's Motion for Reconsideration**

### 1.    Applicable Law

"The decision to grant or deny a motion for reconsideration is within the sound discretion of the district court." *In re Optimal U.S. Litig.*, 813 F. Supp. 2d 383, 387 n.6 (S.D.N.Y. 2011) (quoting *Patterson* v. *United States*, No. 04 Civ. 3140 (WHP), 2006 WL 2067036, at *1 (S.D.N.Y. July 26, 2006)).  Under Local Rule 6.3, the moving party must "point to controlling decisions or data that the court overlooked — matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader* v. *CSX Transp. Inc.*, 70 F.3d 255, 256-57 (2d Cir. 1995) (internal citations omitted) (noting that the standard for granting motions for reconsideration is "strict"); *accord Van Buskirk* v. *United Grp. of Cos., Inc.*, 935 F.3d 49, 54 (2d Cir. 2019).

Compelling reasons for granting a motion for reconsideration are limited to "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Virgin Atl. Airways, Ltd.* v. *Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992) (internal quotation marks and citation omitted); *accord Kolel Beth Yechiel Mechil of Tartikov, Inc.* v. *YLL Irrevocable Tr.*, 729 F.3d 99, 108 (2d Cir. 2013). "This standard is exigent because 'reconsideration of a previous order is an

---

other relief as "Pl. Recon. Br." (Dkt. #36); Defendant's memorandum in opposition to Plaintiff's motion for reconsideration as "Def. Recon. Opp." (Dkt. #46); and Plaintiff's reply memorandum in further support of its motion for reconsideration as "Pl. Recon. Reply" (Dkt. #47).  Further, the Court refers to Plaintiff's letter motion for leave to file an amended complaint as "Pl. Am. Br." (Dkt. #35); and Defendant's letter response in opposition as "Def. Am. Opp." (Dkt. #41).

extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources.'" *Tears* v. *Bos. Sci. Corp.*, No. 17 Civ. 9793 (AJN), 2019 WL 2866847, at *1 (S.D.N.Y. July 3, 2019) (citing *In re Health Mgmt. Sys., Inc. Sec. Litig.*, 113 F. Supp. 2d 613, 614 (S.D.N.Y. 2001)).  A motion for reconsideration is "not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a 'second bite at the apple[.]'" *Analytical Surveys, Inc.* v. *Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012) (quoting *Sequa Corp.* v. *GBJ Corp.*, 156 F.3d 136, 144 (2d Cir. 1998)).

###    2.    Analysis

With the exception of its request for reconsideration of the availability of lost profits damages, which request is discussed in greater detail below, Plaintiff has failed to identify any legal or factual issues overlooked by the Court that would alter the Court's conclusions in the March 26 Opinion. Instead, Plaintiff largely attempts to relitigate issues already carefully examined and decided by the Court.

Beginning with the Complaint's claims for fraud in the inducement and fraud to avoid the Agreement's termination (Claims Two and Three), Plaintiff asserts that this Court erred in finding that Plaintiff failed to allege (i) that the statements at issue were inaccurate at the time they were made; (ii) that Defendant had a duty to disclose material information and failed to abide by such a duty; and (iii) a false statement upon which Plaintiff reasonably relied. (Pl. Recon. Br. 5-7 (citing *Sussman*, 2021 WL 1165077, at *12)).  Plaintiff also

asserts that "the Complaint could not be more clear in alleging reliance by Sussman on the fraudulent representations and fraudulent omissions by VWR." (*Id.* at 9). Yet the Court did not overlook any controlling law or material facts. To the contrary, the Court carefully considered each of Plaintiff's allegations, even specifically citing to them in the March 26 Opinion. *See, e.g.*, *Sussman*, 2021 WL 1165077, at *12-14. Plaintiff here does little more than highlight substantive disagreements with the Court as to the nature of Plaintiff's allegations in the pending action. That is not an adequate basis upon which to grant a motion for reconsideration. *Shrader*, 70 F.3d at 257.

Turning next to the Complaint's breach of warranty claim (Claim Four), Plaintiff argues that the Court improperly applied a "highly probable" standard in its evaluation, rather than the "flexible 'plausibility' standard" required by law. (Pl. Recon. Br. 9-11 (quoting *In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 n.3 (2d Cir. 2007))). In so doing, however, Plaintiff mischaracterizes the March 26 Opinion. In its opposition brief to Defendant's motion to dismiss, and then again in its motion for reconsideration, Plaintiff argued that Defendant was aware of pending or threatened litigation at the time of the Agreement, contrary to Defendant's contractual representation that no such litigation existed. (Pl. Opp. 14; Pl. Recon. Br. 9-11). From this, Plaintiff argues that "Troxell's unexplained and sudden termination of its critical role in distributing the Triumph Board ... coupled with CDW's unwillingness to continue the listing of the Triumph Board, would surely make the existence or threat of litigation not merely plausible, but *highly probable*." (Pl. Opp. 14

6

(emphasis added); *see also* Pl. Recon. Br. 9-11).  The Court concluded that this allegation was conclusory, as "Plaintiff [had] not alleged any facts suggesting that Defendant's relationships with Troxell and CDW made the existence of litigation highly probable."  *Sussman*, 2021 WL 1165077, at *17.

It is clear from the March 26 Opinion that the Court did not impose a "highly probable" standard.  Rather, the Court merely quoted Plaintiff's opposition brief in explaining its finding that Plaintiff's allegation was unsupported by facts.  The Court determined that Plaintiff's claim failed under the plausibility standard applicable to a breach of warranty claim, and not some heightened standard.  *See generally Sussman*, 2021 WL 1165077, at *7 (outlining standards for motions to dismiss under Rule 12(b)(6)).

With respect to the breach of contract claims set forth in Claim Five and Six of the Complaint, Plaintiff asserts that the Court misapplied New York contract law by taking "an exceedingly narrow and exclusively textualist view on interpreting contractual language."  (Pl. Recon. Br. 12).  The Court did no such thing.  Quite to the contrary, the Court carefully examined the Agreement and applied New York law, taking care to "give effect to the expressed intentions of the parties," which are "generally discerned from the four corners of the document itself."  *Sussman*, 2021 WL 1165077, at *8 (quoting *Lockheed Martin Corp.* v. *Retail Holdings, N.V.*, 639 F.3d 63, 69 (2d Cir. 2011), and *MHR Cap. Partners LP* v. *Presstek, Inc.*, 12 N.Y.3d 640, 645 (2009)).  Plaintiff cannot, under the guise of "correcting" the Court's application of New York law, relitigate the contractual issues that were decided in the March 26 Opinion.

More fundamentally, Plaintiff's efforts to now introduce ambiguity where none exists smack of wishful thinking.  As Defendant notes (Def. Recon. Opp. 13), Plaintiff did not raise ambiguity in opposition to Defendant's motion to dismiss (*see generally* Pl. Opp.), and a motion for reconsideration is plainly not an opportunity to raise new arguments.  *See Liberty Media Corp.* v. *Vivendi Universal, S.A.*, 861 F. Supp. 2d 262, 265 (S.D.N.Y. 2012) (noting that motion for reconsideration "is not an opportunity for making new arguments that could have been previously advanced, nor is it a substitute for appeal").  In any event, Plaintiff's newly-minted claims of ambiguity fail.  Plaintiff concedes in both its earlier opposition brief to Defendant's motion to dismiss and its current motion for reconsideration that under the terms of the Agreement, Defendant was under no express obligation to provide Plaintiff with information about customer inquiries, sales leads, or events.  (Pl. Recon. Br. 15; Pl. Opp. 16-18).  Undaunted, Plaintiff claims that the Agreement need not specifically delineate an obligation in order for the Court to find it inherent in the purpose of the agreement.  (Pl. Recon. Br. 15).  The Court has already considered this argument and rejected it:

> Plaintiff refers the Court to cases emphasizing that courts must consider "the purpose of the parties in making the contract" and "[t]he practical interpretation of the contract by the parties, manifested by their conduct subsequent to its formation."  Tellingly, however, Plaintiff has not cited a single case in which courts have imported such requirements and obligations into an agreement, and the Court will not do so here.  Rather, as Defendant correctly observes, New York courts generally discern parties' intent through the plain language of the agreement, particularly where, as here, the parties are "sophisticated business entities."

> Put somewhat differently, where the parties negotiated specific requirements and obligations at the time they entered into the Agreement, the Court will not belatedly impose additional requirements upon Defendant. The Court cannot rewrite the Agreement where Plaintiff failed to negotiate for the requirements that it now deems vital to the Agreement's purpose.

*Sussman*, 2021 WL 1165077, at *15 (internal citations omitted).[2]

As a separate basis of error, Plaintiff challenges the Court's decision to enforce the Agreement's limit on consequential damages. (Pl. Recon. Br. 17-19; Pl. Recon. Reply 9-10). *See generally Sussman*, 2021 WL 1165077, at *20. The Court finds that this is the one area in which reconsideration is appropriate. In opposing Defendant's motion to dismiss, Plaintiff made mention of lost profits in the heading of its argument on available damages; however, the vast majority of its discussion focused on punitive damages. (*See* Pl. Opp. 19-21). It is for this reason that the Court understood Plaintiff to have abandoned its

---

[2]    A variation on this theme is found in Plaintiff's opposition to the Court's treatment of its indemnification arguments. (Pl. Recon. Br. 19-21; Pl. Recon. Reply 6-7). To review, in the March 26 Opinion, the Court discussed the Second Circuit's requirement of "unmistakably clear" language in the indemnification provision demonstrating the parties' intention to cover first-party claims, and found that the relevant indemnification provision was not sufficiently clear. *See Sussman Sales Co., Inc.* v. *VWR Int'l, LLC*, No. 20 Civ. 2869 (KPF), 2021 WL 1165077, at *18 (S.D.N.Y. Mar. 26, 2021) (quoting *Lehman XS Tr., Series 2006-GP2 by U.S. Bank Nat'l Ass'n* v. *GreenPoint Mortg. Funding, Inc.*, 916 F.3d 116, 125-26 (2d Cir. 2019)). Plaintiff protests, arguing that the indemnification provision is ambiguous, such that a jury should decide its scope. (*See* Pl. Recon. Br. 20 ("The Court's conclusion that the indemnity claim does not 'refer "exclusively or unequivocally" to claims between Plaintiff and Defendant' overlooks the specific language of the agreement and resolves an issue of interpretation that must be left to the jury to decide." (quoting *Sussman*, 2021 WL 1165077, at *19))). Of note, Plaintiff's argument on reconsideration is squarely at odds with its argument in opposition to Defendant's motion to dismiss, the latter of which contended that the language of the indemnification provision was "unmistakably clear" in favor of first-party indemnification. (Pl. Opp. 22). It was not, for all of the reasons the Court cited in the March 26 Opinion. *See Sussman*, 2021 WL 1165077, at *19. What is more, Plaintiff's suggestion that the provision should be submitted to the jury for its interpretation only underscores the absence of "unmistakably clear" language in the indemnification provision.

request for lost profits damages.  *See Sussman*, 2021 WL 1165077, at *16.

Only now, with the clarity provided by Plaintiff's reconsideration submissions,

does the Court understand that Plaintiff's single, oblique reference to

"consequential damages" in the final paragraph of its damages section was

intended to encompass Plaintiff's arguments with respect to lost profits

damages.

"New York courts have routinely enforced liability-limitation provisions

when contracted by sophisticated parties, recognizing such clauses as a means

of allocating economic risk in the event that a contract is not fully performed."

*Horowitz* v. *Nat'l Gas & Elec., LLC*, No. 17 Civ. 7742 (JPO), 2018 WL 4572244,

at *8 (S.D.N.Y. Sept. 24, 2018) (quoting *Process America, Inc.* v. *Cynergy

Holdings, LLC*, 839 F.3d 125, 138 (2d Cir. 2016)).  "But the [New York] Court of

Appeals has also explained that an exculpatory agreement ... will not exonerate

a party from liability under all circumstances. ... [I]t will not apply to exemption

of willful or grossly negligent acts ... [or when] the misconduct for which it

would grant immunity smacks of intentional wrongdoing."  *Id.* (quoting

*Net2Globe Intern., Inc.* v. *Time Warner Telecom of N.Y.*, 273 F. Supp. 2d 436,

450 (S.D.N.Y. 2003) (internal citation and quotation marks omitted)).  Conduct

that "smacks of intentional wrongdoing ... is conduct that evinces a reckless

indifference to the rights of others."  *Id.* (quoting *Net2Globe Intern., Inc.*, 273 F.

Supp. 2d at 450 (internal citation omitted).  "To pierce a limitation-of-liability

clause under this standard, a plaintiff must at least establish that the

defendant's breaching conduct was performed 'in bad faith,' which 'connotes a

dishonest purpose.'" *Horowitz*, 2018 WL 4572244, at *8 (quoting *Kalisch-Jarcho, Inc.* v. *City of New York*, 58 N.Y.2d 377, 384-85 (1983)).

Accepting Plaintiff's allegations as true, as it must at this stage, the Court finds that Plaintiff has satisfied that legal standard with respect to its surviving breach of warranty claim (Claim One).  In other words, Plaintiff has alleged facts sufficient to show that Defendant may have acted intentionally and in bad faith.  Accordingly, the Court grants Plaintiff's motion for reconsideration to reinstate Plaintiff's demand for lost profits.  In all other respects, for the reasons detailed above, the motion is denied.

## C.    The Court Denies Plaintiff's Motion for Partial Final Judgment

As an alternative to reargument, Plaintiff asks the Court to sever the dismissed claims for relief and enter final judgment on those claims pursuant to Federal Rule of Civil Procedure 54(b).  (Pl. Recon. Br. 21-25).  Because granting such a request would only promote inefficiencies for both courts and parties, the Court denies the request.

### 1.    Applicable Law

In general, "the entry of a final judgment is ... appropriate only after all claims have been adjudicated."  *Novick* v. *AXA Network, LLC*, 642 F.3d 304, 310 (2d Cir. 2011) (internal quotation marks omitted).  "Rule 54(b) authorizes entry of a partial final judgment 'as to one or more, but fewer than all, claims or parties' only when three requirements have been satisfied: [i] there are multiple claims or parties; [ii] at least one claim or the rights and liabilities of at least one party has been finally determined; and [iii] the court [expressly

determines] that there is no just reason for delay.'" *Acumen Re Mgmt. Corp.* v. *Gen. Sec. Nat. Ins. Co.*, 769 F.3d 135, 140 (2d Cir. 2014) (quoting Fed. R. Civ. P. 54(b)).

"Respect for the 'historic federal policy against piecemeal appeals' requires that a Rule 54(b) certification not be granted routinely." *Citizens Accord, Inc.* v. *Town of Rochester*, 235 F.3d 126, 128-29 (2d Cir. 2000) (per curiam) (quoting *Curtiss-Wright Corp.* v. *Gen. Elec. Co.*, 446 U.S. 1, 8 (1980)). Indeed, "the court's power under Rule 54(b) ... should be exercised sparingly." *Advanced Magnetics, Inc.* v. *Bayfront Partners, Inc.*, 106 F.3d 11, 16 (2d Cir. 1997) (internal quotation marks omitted). Thus, "certification under Rule 54(b) should be granted only if there are interests of sound judicial administration and efficiency to be served, or, in the infrequent harsh case, where there exists some danger of hardship or injustice through delay which would be alleviated by immediate appeal." *FAT Brands Inc.* v. *PPMT Cap. Advisors, Ltd.*, No. 19 Civ. 10497 (JMF), 2021 WL 1392849, at *1 (S.D.N.Y. Apr. 13, 2021) (quoting *Harriscom Svenska AB* v. *Harris Corp.*, 947 F.2d 627, 629 (2d Cir. 1991)).

Significantly, "[i]n applying these principles," the Second Circuit has "repeatedly noted that the district court generally should not grant a Rule 54(b) certification if the same or closely related issues remain to be litigated." *Novick*, 642 F.3d at 311 (internal quotation marks omitted). That is, courts "should avoid the possibility that the ultimate dispositions of the claims remaining in the district court could either moot [a] decision on the appealed claim or require [an appellate court] to decide issues twice." *FAT Brands Inc.*, 2021 WL

1392849, at *1 (quoting *Ginett* v. *Comput. Task Grp., Inc.*, 962 F.2d 1085, 1095 (2d Cir. 1992)).  Additionally, "'[i]t does not normally advance the interests of sound judicial administration or efficiency to have piecemeal appeals that require two (or more) three-judge panels to familiarize themselves with a given case' in successive appeals from successive decisions on interrelated issues." *Novick*, 642 F.3d at 311 (quoting *Harriscom*, 947 F.2d at 631).

### 2.   Analysis

In this case, there can be no dispute that there are "multiple claims," and that "at least one of the claims … has been finally determined."  *See Acumen Re Mgmt. Corp.*, 769 F.3d at 140.  Thus, Plaintiff's Rule 54(b) motion turns on whether the Court can find "no just reason for delay," keeping in mind the requirement that certification under Rule 54(b) should be granted only if (i) doing so would serve the interests of "sound judicial administration and efficiency," or (ii) "there exists some danger of hardship or injustice through delay which would be alleviated by immediate appeal."  *FAT Brands Inc.*, 2021 WL 1392849, at *1.

Here, Rule 54(b) certification would not serve the interests of sound judicial administration and efficiency.  The dismissed claims and the remaining claims rely on the same underlying facts concerning the negotiation and performance of the Agreement.  The Court dismissed with prejudice Plaintiff's claims for fraud in the inducement (Claim Two), fraud to avoid the Agreement's termination (Claim Three), breach of the warranty that there was no litigation relating to its supply or distribution chains (Claim Four), breach of the implied

covenant of good faith and fair dealing (Claim Six), and indemnification (Claim Seven) in their entirety and partially dismissed Plaintiff's breach of contract claim (Claim Five).  All of these dismissed claims are based upon conduct relating to the same Agreement that underpins Plaintiff's surviving claims for breach of the warranty that Defendant would comply with the law (Claim One) and accounting (Claim Eight).  Moreover, the Court dismissed Plaintiff's claims for breach of the covenant of good faith and fair dealing and indemnification (Claims Six and Seven, respectively) as "duplicative of Claim Five," which necessarily links the dismissed claims to at least one of the remaining unresolved claims.  *See Sussman*, 2021 WL 1165077, at *18-19.

"As the Second Circuit has advised, denying appeals under Rule 54(b) is 'particularly desirable where, as here, the adjudicated and pending claims are closely related and stem from essentially the same factual allegations.'" *Negrete* v. *Citibank, N.A.*, No. 15 Civ. 7250 (RWS), 2017 WL 2963494, at *2 (S.D.N.Y. July 11, 2017) (quoting *Cullen* v. *Margiotta*, 618 F.2d 226, 228 (2d Cir. 1980)).  Should this Court grant final judgment under Rule 54(b), an appellate court would be required to familiarize itself with the Agreement, the facts surrounding the parties' negotiations, and the subsequent performance of the Agreement.  Thereafter, should either side bring an appeal regarding any of the remaining claims, a second appellate panel would be required to learn the same facts.  This is precisely the type of "piecemeal appeal" the Second Circuit has cautioned district courts to avoid.  *See Novick*, 642 F.3d at 311.

Further, there is no danger of hardship or injustice through delay that would be alleviated by immediate appeal.  On this point, Plaintiff argues that Rule 54(b) certification would be appropriate to avoid a duplicative trial, quoting *Grand River Enterprises Six Nations, Ltd.* v. *Pryor* for the proposition that "the potential for a duplicative trial in the event of reversal 'is precisely the type of danger of hardship or injustice to which Rule 54(b) is directed.'"  (Pl. Recon. Br. 23 (quoting 425 F.3d 158, 165 (2d Cir. 2005))).  But *Grand River* was a suit against 31 current and former state attorneys general in their official capacities, which was before the Second Circuit following the district court's dismissal of the claims against every non-New York defendant for lack of personal jurisdiction.  There, the Second Circuit found that the district court did not abuse its discretion in granting the plaintiffs' subsequent Rule 54(b) motion, and in so doing agreed with the district judge that "it would make no sense to try the antitrust count against New York State alone if the dismissals of the other states … turned out to be in error."  *Grand River*, 425 F.3d at 165. Plaintiff also cites *Linde* v. *Arab Bank, PLC* in support of its argument.  (Pl. Recon. Br. 23 (citing 882 F.3d 314 (2d Cir. 2018))).  That case is similarly inapposite, involving over 16 plaintiffs, some of whom stipulated to a damages amount before moving for Rule 54(b) certification in order to appeal a jury instruction given at trial.

In contrast to the cases cited by Plaintiff, the instant action involves one plaintiff and one defendant, and Plaintiff has not identified any sound justification to grant Rule 54(b) certification.  *See TADCO Const. Group Corp.* v.

*Dormitory Auth. of New York*, No. 08 Civ. 73 (KAM) (JMA), 2012 WL 3011735, at

*6 (E.D.N.Y. July 23, 2012) (finding that the prejudice caused by having to wait

until completion of a trial to pursue plaintiff's other claim is a hardship

"inherent in every denial of Rule 54(b) certification, and hardly rise[s] to the

level of hardships that warrant immediate appeal"); *see also Hogan* v. *Consol.*

*Rail Corp.*, 961 F.2d 1021, 1025 (2d Cir. 1992) (reversing district court's

Rule 54(b) certification for failure to find "that the case was an exceptional one

or that there would be any unusual hardship in requiring [the parties] to await,

in accordance with normal federal practice, the disposition of the entire case

before obtaining appellate review of the dismissal of their claims").  For these

reasons, the Court denies Plaintiff's Rule 54(b) motion.

### D.    The Court Denies Plaintiff's Motion for Leave to Amend

Neither in responding to Defendant's pre-motion letter (*see* Dkt. #15), nor

in opposing Defendant's motion to dismiss (*see* Pl. Opp.), did Plaintiff even hint

at a desire to amend its pleadings.  Now, however, Plaintiff requests leave to

(i) "amend the *ad* [*damnum*] for the non-dismissed breach of warranty claim to

add a request for punitive damages"; and (ii) "add a new Ninth Claim for Relief

for fraudulent inducement of Plaintiff's agreement to the Sales Representative

Agreement based on fraudulent representations and omissions regarding

Defendant's prior and intended future compliance with law."  (Pl. Am. Br. 2-3).

As explained herein, the Court denies leave to amend.

### 1.      Applicable Law

"Rule 15(a)(2) of the Federal Rules of Civil Procedure provides that a court 'should freely give leave [to amend] when justice so requires.'"  *Gorman* v. *Covidien Sales, LLC*, No. 13 Civ. 6486 (KPF), 2014 WL 7404071, at *2 (S.D.N.Y. Dec. 31, 2014) (quoting Fed. R. Civ. P. 15(a)(2)).  Consistent with this liberal amendment policy, "'[t]he rule in this Circuit has been to allow a party to amend its pleadings in the absence of a showing by the nonmovant of prejudice or bad faith.'"  *Id.* (alteration in *Gorman*) (quoting *Block* v. *First Blood Assocs.*, 988 F.2d 344, 350 (2d Cir. 1993)).  Although "[l]eave to amend should be freely granted" pursuant to Rule 15(a)(2), this Court "'has the discretion to deny leave if there [is] a good reason for it, such as futility, bad faith, undue delay, or undue prejudice to the opposing party.'"  *In re Arab Bank, PLC Alien Tort Statute Litig.*, 808 F.3d 144, 159 (2d Cir. 2015) (quoting *Jin* v. *Metro. Life Ins. Co.*, 310 F.3d 84, 101 (2d Cir. 2002)), *as amended* (Dec. 17, 2015); *see also Foman* v. *Davis*, 371 U.S. 178, 182 (1962) (analyzing the standard for a post-judgment motion to amend).

Where, as here, Plaintiff's "claims against [Defendant] were previously dismissed with prejudice," and Plaintiff "purport[s] to ... request under Fed. R. Civ. P. 15(a)" to amend the complaint based on "new evidence," the Court may "construe plaintiffs' request as a motion under Fed. R. Civ. P. 54(b)."  *In re Bisys Sec. Litig.*, 496 F. Supp. 2d 384, 386 (S.D.N.Y. 2007); *see generally Geo-Grp. Commc'ns*, Inc. v. *Shah*, No. 15 Civ. 1756 (KPF), 2020 WL 5743516, at *16 (S.D.N.Y. Sept. 25, 2020), *reconsideration denied*, No. 15 Civ. 1756 (KPF), 2020

WL 6729181 (S.D.N.Y. Nov. 16, 2020).  The legal standards for that rule are set forth earlier in this Opinion.

### 2.    Analysis

Because the Court dismissed several of Plaintiff's claims with prejudice in the March 26 Opinion, it construes Plaintiff's motion to amend its Complaint as an application pursuant to Rule 54(b).  As discussed above, Plaintiff has failed to meet the standard for reconsideration under Rule 54(b).  *Accord Pub. Emps. Ret. Ass'n of N.M.* v. *PricewaterhouseCoopers LLP*, 305 F. App'x 742, 744-45 (2d Cir. 2009) (summary order) (affirming rejection of motion for reconsideration styled by movants as motion to amend under both Rule 54(b) and Rule 15(a).  Further, Plaintiff is "not entitled to an advisory opinion from the Court informing [it] of the deficiencies in the complaint and then an opportunity to cure those deficiencies."  *Bellikoff* v. *Eaton Vance Corp.*, 481 F.3d 110, 118 (2d Cir. 2007).

Turning now to the proffered amendments, the Court observes that Plaintiff first requests "leave to amend the *ad* [*damnum*] for the non-dismissed breach of warranty claim [Claim One] to add a request for punitive damages." (Pl. Am. Br. 2).  In this regard, Plaintiff asserts that "[t]he need for punitive damages with respect to that claim was not apparent until the Court dismissed the two fraud claims which also sought punitive damage relief."  (*Id.*).  And it is true that under New York law, "damages arising from the breach of a contract will ordinarily be limited to the contract damages necessary to redress the private wrong," but "punitive damages may be recoverable if necessary to

vindicate a public right."  *N.Y. Univ.* v. *Cont'l Ins. Co.*, 87 N.Y.2d 308, 315 (1995).

Significantly, however, Plaintiff has already conceded that it cannot recover punitive damages under Claim One.  In its memorandum in opposition to the motion to dismiss, Plaintiff argued:

> A second and independently sufficient ground for determining that the fraud claims are not duplicative [of the contract claims] is that those claims seek punitive damages while the breach of warranty claims do not. The rule of law in New York is that [] "if the plaintiff can recover punitive damages under [a separate] claim *and cannot recover punitive damages under a breach of contract claim*, then the punitive damages constitute unique recovery … and the claim is not duplicative of the breach of contract claim."

(Pl. Opp. 12-13 (emphasis added) (internal citation omitted)).  Plaintiff may not change course and argue for punitive damages with respect to Claim One now that it no longer needs to differentiate Claim One from the fraud claims dismissed in the March 26 Opinion.  A court may make a finding of "bad faith" for Rule 15(a) purposes where a party waited to see "how [it] would fare on the prior motion to dismiss" before seeking leave to amend.  *In re Gen. Elec. Co. Sec. Litig.*, No. 09 Civ. 1951 (DLC), 2012 WL 2892376, at *4 (S.D.N.Y. July 12, 2012) (quoting *Vine* v. *Beneficial Finance Co.*, 374 F.2d 627, 637 (2d Cir. 1967)).  The Court makes such a finding here.  As such, Plaintiff may not seek leave to amend the Complaint to add a claim for punitive damages to Claim One.

The Court similarly rejects Plaintiff's request for leave "to add a Ninth Claim for Relief for fraudulent inducement of Plaintiff's agreement to the Sales

Representative Agreement based on fraudulent representations and omissions regarding Defendant's prior and intended future compliance with law." (Pl. Am. Br. 2). By way of explanation, Plaintiff writes that

> [t]he [March 26 Opinion] clearly viewed the fraud in the inducement claim [Claim Two] to be limited solely to the fraud with respect to Troxell, FAMIS and the distribution chain. Accordingly, the [March 26 Opinion] alerted us to a need to amend the Complaint to plead fraudulent inducement based on criminal bid rigging and fraud relating to that conduct.

(*Id*.). Here, however, Plaintiff's arguments fail on futility grounds. The Court has already rejected Plaintiff's proposed claim as duplicative of Claim One, observing specifically in the March 26 Opinion that "any attempt to broaden Claim Two to encompass Plaintiff's bid-rigging allegations would render it duplicative of Claim One, and subject to dismissal on that basis." *Sussman*, 2021 WL 1165077, at *11 n.17. Accordingly, Plaintiff's proposed Claim Nine would be duplicative of Claim One, and the Court denies Plaintiff leave to amend the Complaint to add this claim.

## CONCLUSION

For the foregoing reasons, Plaintiff's motions for reconsideration is GRANTED in part and DENIED in part, such that the Court reinstates Plaintiff's demand for lost profits damages.  Plaintiff's motion for leave to amend the Complaint is DENIED.  The Clerk of Court is directed to terminate the motions at docket entries 35, 36, and 44.  The parties are directed to submit a proposed Case Management Plan and Scheduling Order and joint status letter on or before **January 21, 2022**.

SO ORDERED.

Dated:     December 21, 2021
           New York, New York

_____
        KATHERINE POLK FAILLA
        United States District Judge